[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11296

Non-Argument Calendar

_____

DUANE E. ARMSTRONG,

Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:19-cv-00775-WFJ-SPF

_____

Before JORDAN, GRANT, and BLACK, Circuit Judges.

PER CURIAM:

Duane E. Armstrong, a Florida prisoner serving a 20-year sentence for burglary of an unoccupied dwelling, dealing in stolen property, and providing false information on a pawn broker form (over $300), appeals the district court's denial of his 28 U.S.C. § 2254 petition. We granted a certificate of appealability on the issue of "[w]hether Armstrong had shown that trial counsel was ineffective for failing to object to the forensic print analyst's testimony that a second analyst had verified her comparison of Armstrong's fingerprints with the latent print found in the burglarized home." Armstrong asserts he was prejudiced by counsel's error, as the hearsay testimony from Nicole Jarvis, the forensic print analyst, bolstered the only state witness testimony that directly connected him to the burglary offense and the jury showed interest in whether there had been any cases where a fingerprint expert had been proven unreliable. After review,[1] we affirm the district court.

_____

[1] We review *de novo* a district court's decision about whether a state court acted contrary to or unreasonably applied clearly established federal law. *Reed v. Sec'y, Fla. Dep't of Corr.*, 593 F.3d 1217, 1239 (11th Cir. 2010). Thus, we review the district court's grant or denial of a § 2254 petition *de novo* but owe deference to the state court's judgment. *Id.*

A federal court cannot grant habeas relief on a claim that was "adjudicated on the merits in State court proceedings" unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Deciding whether a state court's decision involved an unreasonable application of federal law requires the federal habeas court to train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims, and to give appropriate deference to that decision." *Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1349 (11th Cir. 2019) (quotation marks and ellipsis omitted).

Under *Strickland v. Washington*, to succeed on an ineffective-assistance-of-counsel claim, a petitioner must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). If the movant fails to establish either prong, we need not address the other prong. *Id.* at 697.

To prove the prejudice prong, the defendant must show a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is one sufficient to undermine confidence in the outcome of trial. *Id.* It is not enough for the defendant to show that the error had some conceivable effect on the

outcome of the proceeding. *Id.* at 693. Rather, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quotation marks omitted). Thus,

> a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Strickland*, 466 U.S. at 695-96.

The district court did not err in denying Armstrong's § 2254 petition because the state court reasonably applied *Strickland* in determining Armstrong had not shown prejudice from counsel's alleged deficient failure to object to Jarvis's hearsay testimony that a second analyst had verified her determination the fingerprint found

on the victim's dresser was a match to Armstrong.  *See* 28 U.S.C.§ 2254(d).  Two pieces of evidence strongly supported the jury's verdict:  (1) the fingerprint on the dresser Jarvis concluded was a match to both the print she took from Armstrong and to the print from the pawn ticket that Armstrong admitted was his, and (2) Armstrong's sale of the stolen jewelry to the pawn shop on the morning of the burglary.  Notably, the state described the fingerprint evidence in closing as the "most important evidence" in the case.  And the jury asked questions about the accuracy of fingerprint results before returning its verdict, reflecting the jury understood the significance of that evidence.

As the postconviction court reasoned in denying relief to Armstrong, even if counsel had objected to Jarvis's statement that her results were verified by a second analyst and the court had excluded that testimony, the jury still would have heard her testimony the fingerprint on the victim's dresser matched Armstrong. Armstrong concedes this point, but argues the statements at issue improperly bolstered the only state witness testimony that directly connected him to the burglary.  Even assuming Armstrong is correct, the effect of the bolstering was trivial, as the jury's verdict was supported by the unaffected evidence (1) that a credentialed analyst found the print on the dresser matched the prints she had taken from Armstrong and his print on the pawn form and (2) his possession and sale of the stolen jewelry soon after the burglary.  *See Strickland*, 466 U.S. at 695-96.

As to Armstrong's possession and pawning of stolen jewelry, the state postconviction court reasoned the jury would still have heard these facts regardless of counsel's alleged deficient performance. Additionally, the jury must not have believed Armstrong's testimony that he bought the jewelry on the street for $30 and had never been inside the victim's home because it convicted him of stealing the jewelry and burglarizing the home. That evidence standing alone would have been sufficient to support his burglary conviction, as the jury was instructed that proof of possession by an accused of property recently stolen by means of a burglary, unless satisfactorily explained, may justify a conviction for burglary. While Armstrong contends he satisfactorily explained his possession of the stolen jewelry, a fair-minded jurist could agree with the state court that, if he had satisfactorily explained it, the jury would not have found him guilty, even in light of the assertedly improper bolstering of the fingerprint expert's testimony. *See Strickland*, 466 U.S. at 694; *Harrington*, 562 U.S. at 104.

The totality of the evidence presented at trial supports the state court's decision that counsel's performance, if deficient, was not prejudicial. *Strickland*, 466 U.S. at 694-96. The jury heard testimony that jewelry was stolen during a burglary, Armstrong pawned the jewelry on the morning it was stolen, investigators found a fingerprint on the dresser where the jewelry had been kept that matched Armstrong's in the print database, and a fingerprint expert took Armstrong's fingerprint, compared it with a fingerprint on the pawn transaction form that Armstrong admitted was his,

compared both fingerprints to the fingerprint found on the victim's dresser, and concluded that all three fingerprints were the same and belonged to Armstrong. Considering the strength of this evidence, the fingerprint examiner's statement that a second analyst had verified her findings did not alter the evidentiary picture such as to undermine confidence in the jury's verdict. *See Strickland*, 3466 U.S. at 695-96. Because Armstrong has failed to show the state court unreasonably applied *Strickland* in concluding Armstrong had failed to show prejudice, it is unnecessary for us to analyze whether Armstrong has shown counsel was deficient. *See id.* at 697.

**AFFIRMED.**